## DURKEE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10367.

Circuit Court of Appeals, Sixth Circuit.
June 4, 1947.

H. Melvin Roberts, of Cleveland, Ohio, for petitioner.

Louise O'Hara, of Washington, D. C. (Sewall Key, A. F. Prescott, and Louise Foster, all of Washington, D. C., on the brief), for respondent.

Before SIMONS, MARTIN, and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The petitioner, R. J. Durkee, seeks a review of a ruling of the Tax Court which upheld a deficiency income tax assessment against him for the calendar year 1941 in the amount of $3,858.15.

The petitioner has been engaged in the electrical contracting business in Cleveland, Ohio, for approximately 20 years. In May 1941, he received $25,000 in settlement of a suit for damages, which was reduced to a net amount of $19,439.95 after payment of attorneys' fees and other costs. In his 1941 income tax return petitioner made reference to the receipt of this sum, but claimed that it was not taxable as income and did not include it as income in the return. The Commissioner held the net proceeds to constitute taxable income and made the deficiency assessment. The Tax Court sustained the Commissioner's ruling.

The correct ruling depends upon the nature of the lawsuit referred to and the settlement under which the proceeds were received. The action, No. 491756, was filed in October 1939 by the petitioner in the Court of Common Pleas, Cuyahoga County, Ohio, against thirty individual firms and corporations engaged in the electrical contracting business in Cleveland, Ohio, and vicinity. An amended petition was filed in January 1940. General denials were filed by the defendants. The amended petition alleged that the petitioner had for approximately 20 years past been an electrical contractor in Cuyahoga County, Ohio; that the defendants during the period of 1928 to 1939 were engaged in a similar business in the county and comprised the greater portion of all the electrical contractors so engaged within the county; that during that period the defendants maintained an agreement with each other for the purpose of forming a combination in restraint of trade by which they fixed the price at which electrical construction work was installed in buildings under construction or improvement and maintained a quota system under which various contracts were allotted among the defendants at fixed prices; that in furtherance of the conspiracy in restraint of trade, the defendants formed an association and controlled the bidding upon electrical construction work, prevented petitioner from bidding on 37 specified contracts, and caused rejection of other bids made by him upon 9 specified jobs; that they induced and coerced architects and builders to refrain from requesting bids upon jobs from the petitioner; that prior to such conspiracy the petitioner had created as an integral part of his business a vast amount of good will, was able to earn from his business an income of approximately $8,000 to $10,000 per year and possessed a reasonable anticipation of increasing the income as the value of the business and the good will attached thereto increased, to a figure of approximately $15,000 to $20,000 per year, and that the income and business would have so increased had the then existing free competition continued; that as a direct result of said conspiracy petitioner suffered great damage in being deprived of the right of free competition, and of the right to engage in business unmolested by threats and intimidations. The amended petition closed with the following allegations:

"18. By reason of the foregoing acts and conduct of the defendants, the good will of plaintiff's business has been destroyed and he has been deprived of an income therefrom for a period of approximately ten years last past of the approximate value of one hundred fifty thousand dollars.

"19. Wherefore, plaintiff prays for judgment against the defendants, and each of them, in a sum fixed pursuant to Section 6397 of the General Code of Ohio at twofold the amount of plaintiff's damages, to-wit, in the sum of three hundred thousand dollars, and for his costs of suit."

The suit was settled in May 1941 for $25,000 at which time the plaintiff executed a release which contained the following provisions:

"Now, Therefore, the said Durkee, for a valuable consideration this day received by him to his full satisfaction of said de-

fendants does hereby for himself, his executors, administrators and assigns, release and discharge from all debts, claims, demands, damages, actions and causes of action whatsoever, and in particular from such as have been asserted in said Case No. 491756, * * * (defendants therein then named).

"Said Durkee agrees forthwith to cause said Case No. 491756 to be dismissed at his cost, no record.

"Said Durkee further agrees that this instrument will be not only his release personally but also his release as a partner of Durkee Electric Company, a partnership now dissolved, and of Durkee Electric R. J. Inc., a corporation."

There was no evidence in the form of either conversation or correspondence further explaining the payment, all of which was received by the petitioner.

■ It is settled that since profits from business are taxable, a sum received in settlement of litigation based upon a loss of profits is likewise taxable; but where the settlement represents damages for lost capital rather than for lost profits the money received is a return of capital and not taxable. Swastika Oil & Gas Company v. Commissioner, 6 Cir., 123 F.2d 382; Martin Bros. Box Company v. Commissioner, 6 Cir., 142 F.2d 457; Farmers' & Merchants' Bank v. Commissioner, 6 Cir., 59 F.2d 912. See also United States v. Safety Car Heating Company, 297 U.S. 88, 98, 56 S.Ct. 353, 80 L.Ed. 500; Hort v. Commissioner, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168; H. Liebes & Company v. Commissioner, 9 Cir., 90 F.2d 932; Arcadia Refining Company v. Commissioner, 5 Cir., 118 F.2d 1010; Raytheon Production Corporation v. Commissioner, 1 Cir., 144 F.2d 110. The difficulty is in determining whether the recovery is for lost profits or for lost capital. The test is as stated by this Court in Farmers' & Merchants' Bank v. Commissioner, supra, and approved in Swastika Oil & Gas Company v. Commissioner, supra, namely, "The fund involved must be considered in the light of the claim from which it was realized and which is reflected in the petition filed." [59 F.2d 913.]

The petitioner relies upon the ruling of this Court in Farmers' & Merchants' Bank v. Commissioner, supra, where it was held that the plaintiff's claim for damages was not one for lost profits but was based upon an alleged tortious injury to the good will of the plaintiff's business, that the true measure of damages was compensation to be determined by ascertaining how much less valuable its business was by reason of the wrongful acts of the defendant, that profits were one of the chief indications of the worth of business, but "the usual earnings before the injury, as compared with those afterward, were only an evidential factor in determining actual loss and not an independent basis for recovery." The amount received in settlement of the litigation there involved was held not taxable. The Commissioner contends, and the Tax Court held, that the amended petition seeks recovery of damages by reason of lost profits as well as damage to good will, and that the settlement accordingly included both items. But we believe that a fair consideration of the amended petition in its entirety leads to the conclusion that it seeks damages only for the injury to the good will of petitioner's business, and that the ruling of this Court in Farmers' & Merchants' Bank v. Commissioner, supra, is applicable on that phase of the case. The gravamen of the amended petition is that the good will of the petitioner's business, which had been built up over a period of years, had been destroyed by the acts of the defendants, which caused him a loss of $150,000. This damage is computed through the loss of income. No claim is made for lost profits. As was the case in Farmers' & Merchants' Bank v. Commissioner, supra, the allegations as to profits both before and after the acts complained of "were only an evidential factor in determining actual loss and not an independent basis for recovery."

■ The respondent also relies on the following additional facts which were not present in that case. Here the petitioner executed a release at the time of settlement. The $25,000 paid under the release was not only to settle the particular suit referred to, but it was also a settlement of all debts, claims, damages, and causes of action what-

soever which existed or might exist in favor of the plaintiff. It was also paid in consideration of a release by the Durkee Electric Company, a partnership then dissolved, and of Durkee Electric R. J. Inc., a corporation, neither of which parties were plaintiffs in the suit. Neither the character nor size of these additional claims was disclosed. The recovery in each case could be either taxable income or non-taxable income. There is nothing in the record to show how much of the $25,000 was paid to the plaintiff in settlement of the pending lawsuit, and how much was paid to him in settlement of other claims which he had against the defendants either in his individual capacity, or as a member of the dissolved partnership, or as a representative of the corporation. The Commissioner held all of it to be taxable income. It is contended that it was the duty of the petitioner to prove either that the entire recovery was non-taxable income or the proper allocation between taxable income and non-taxable income, and that failure to meet this burden requires that the Commissioner's ruling be upheld. Hord v. Commissioner, 6 Cir., 143 F.2d 73; H. Liebes & Company v. Commissioner, supra; Buck v. Commissioner, 9 Cir., 83 F.2d 786. Such is the rule where the ruling is not arbitrary or excessive and has support in the evidence. Cherokee Motor Coach Company v. Commissioner, 6 Cir., 135 F.2d 840, 841; Sellmayer Packing Co. v. Commissioner, 4 Cir., 146 F.2d 707, 714. But where it is apparent from the record that the Commissioner's determination is arbitrary and excessive, the taxpayer is not required to establish the correct amount that lawfully might be charged against him, and he is not required to pay a tax that he obviously does not owe. In proceedings before the Tax Court, as distinguished from suits for refund in the District Court, it is sufficient to show that the Commissioner's determination is invalid. Upon such a showing the case should be remanded to the Tax Court for further hearings on the point involved. Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L. Ed. 623; Worcester County Trust Company v. Commissioner, 1 Cir., 134 F.2d 578, 580; Stock Yards National Bank v. Commissioner, 8 Cir., 153 F.2d 708, 712; Piper v. Commissioner, 5 T.C. 1104, 1111. Obviously, a large portion, if not practically all, of the $25,000 received was in settlement of the lawsuit, and under our view of the case was not taxable as a matter of law. The Tax Court should hold further hearings in order to determine the proper allocation between the taxable and non-taxable portions of the amount received in settlement.

It is also urged upon us that a sale or conversion into cash of capital assets, which have increased in value over a period of time, is a realization of the gain in value over the cost or other applicable basis of such assets, and such realized gain becomes taxable income. Palmer v. Commissioner, 302 U.S. 63, 68, 69, 58 S.Ct. 67, 82 L.Ed. 50. Compare Lynch v. Turrish, 247 U.S. 221, 38 S.Ct. 537, 62 L.Ed. 1087. We agree that the rule is applicable in this case. The basis of the good will by which this realized gain could be measured was not before the Tax Court and was not determined by it. Under the ruling in Helvering v. Taylor, supra, this basis should also be determined by the Tax Court.

The ruling of the Tax Court approving the deficiency assessment is set aside, and the case remanded to the Tax Court for further proceedings in accordance with the views expressed herein.