LAIRD et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 5520.

Circuit Court of Appeals, Third Circuit.

March 27, 1935.

On Rehearing Aug. 21, 1936.

Richards, Layton & Finger, of Wilmington, Del., and Bright, Thompson, Hinrichs & Warren, of Washington, D. C. (Aaron Finger, of Wilmington, Del., Frank S. Bright, of Washington, D. C., and Robert H. Richards, of Wilmington, Del., of counsel), for petitioners.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, and L. W. Post, Sp. Assts. to the Atty. Gen., for respondent.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

This is a petition for review of an order of redetermination of the Board of Tax Appeals. The petitioners are executors of the estate of William Winder Laird, who, at the time of his death, owned 1,000 shares of the common stock of the Christiana Securities Company and 250 shares of the capital stock of the Delaware Realty & Investment Company. Neither the Christiana nor the Delaware stock were listed on the stock exchange. For the purpose of computing federal estate tax, the petitioners valued the Christiana stock at $800 and the Delaware stock at $781 per share. The Commissioner of Internal Revenue revalued the Christiana stock at $1,760.60 and the Delaware stock at $15,066.51 per share, and thereupon assessed a deficiency. Upon petition for redetermination, the ruling of the Commissioner was sustained by the decision and order of the Board of Tax Appeals.

The petitioners contend that the Commissioner put too high a value on these stocks. Section 302 of the Revenue Act of 1926 (26 U.S.C.A. § 411) provides:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death. * * *"

Treasury Regulation 70, promulgated under this act, provides:

"The value of all property includable in the gross estate is the fair market value thereof at the time of the decedent's death. The fair market value is the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell. * * *

"The value of stocks and bonds listed upon a stock exchange should be determined by taking the mean between the highest and lowest quoted selling prices upon the date of death. * * *

"Stock in a close corporation should be valued upon the basis of the company's net worth, earning and dividend-paying capacity, and all other factors having a bearing upon the value of the stock. * * *"

The principal assets of the Christiana Company consisted of listed stock of E. I. du Pont de Nemours & Co. and of Atlas Powder Company. In accordance with the provisions of the statute and regulation, supra, the Commissioner took the mean between the highest and lowest quoted selling prices of the listed stock at the time of the decedent's death, which he used as a factor in arriving at the value of the Christiana stock. The petitioners argue that, had they dumped on the market large blocks of the listed stock, they could not have obtained prices even approximating those determined by the Commissioner. They contend that the listed stock should be valued at the prices which their expert witnesses testified could probably be obtained upon a forced sale. In our opinion, this method would not result in a fair determination of the value of the Christiana stock because the prices obtained upon a sacrifice sale do not necessarily represent the true value of the listed stock. We do not think the presumption of correctness which follows the Commissioner's determination of value (Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Lucas v. Kansas City Structural Steel Co., 281 U.S. 264, 50 S.Ct. 263, 74 L.Ed. 848) was overcome by the petitioners' testimony. This court suggested in Heiner v. Crosby (C.C.A.) 24 F.(2d) 191, that the value of stock might be proved by evidence of book values, intrinsic values, earnings, good will, and prospects of the company involved. The petitioners failed to avail themselves of this procedure by which they might have proved that the value of the listed stock owned by the Christiana Company was less than the market quotations or the Commissioner's valuation.

What has been said about the value of the Christiana stock also applies to the Delaware stock. An additional element enters into the determination of the value of the Delaware stock. The principal assets of the Delaware Company consisted of

stock of the Christiana Company, the du Pont Company, the Atlas Powder Company, and the Hercules Powder Company; $13,500,000 of the assets of the Delaware Company consisted of real estate and securities which had been transferred to it by Pierre S. du Pont and his wife in consideration of an annuity of $900,000 to them jointly or to the survivor.

In valuing the Delaware stock, the Commissioner included the assets of the annuity fund and the annuity reserve fund, and deducted as a liability the present worth of the annuity. The petitioners contend that the Commissioner erred in so doing because there was no provision in the annuity contract giving the Delaware Company the right to discharge its obligation to Pierre S. du Pont and his wife by payment of the present worth of the annuity at any time before the death of the survivor of the annuitants. We are not convinced by this argument. The method used by the Commissioner is followed in cases where the net value of the assets of a corporation which has mortgaged its property is calculated by deducting the amount of the liability under the terms of the mortgage and thus determining the mortgagor's equity in the property. In our opinion, the Commissioner properly included the annuity securities among the assets of the Delaware Company.

We think the Board of Tax Appeals has carefully and thoroughly considered the facts and the law. We see no error in its findings and conclusions. Order affirmed.

### On Petition for Rehearing

DAVIS, Circuit Judge.

This case is before us on petition for rehearing. In our prior decision we affirmed the order of redetermination of the Board of Tax Appeals holding the petitioners-appellants liable for a deficiency in taxes under the estate tax provisions of the Revenue Act of 1926. But since the decision was rendered in this case, the decision in Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623, was handed down, and therefore the appellants filed a petition for rehearing.

The facts briefly restated are as follows: William Winder Laird died on November 9, 1927. At his death he owned 1,000 shares of common stock in the Christiana Securities Company and 250 shares in the Delaware Realty & Investment Company. In his tax return under the estate tax provisions, the stock of the Christiana Company was valued at $800 per share and the stock of the Delaware Company at $781.17 per share. The Commissioner did not accept that valuation, and revalued the stock of the Christiana Company at $1,760.60 per share, and that of the Delaware Company at $15,066.51 per share. The petitioners appealed to the Board, which sustained the Commissioner, and they then appealed from the determination of the Board to this court.

The question involved in this case is whether or not the determination of the Commissioner was made in accordance with the applicable statutory provisions and treasury regulations.

The Christiana Company and the Delaware Company are both close corporations. Their stock has never been listed or dealt in on any stock exchange or market. The principal assets of the Christiana Company consisted of 840,000 shares of E. I. du Pont de Nemours & Company, and 70,571 shares of the Atlas Powder Company. The Delaware Company also held large blocks of stock in these two companies, and also a considerable amount of stock in the Hercules Powder Company.

Section 302 of the Revenue Act of 1926 (26 U.S.C.A. § 411) provides that:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—* * *

"(a) To the extent of the interest therein of the decedent at the time of his death."

Treasury Regulations 70, art. XII, promulgated under this act, provides that:

"The value of all property includable in the gross estate is the fair market value thereof at the time of the decedent's death. The fair market value is the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell. * * *

"(3) Stocks and bonds—The value of stocks and bonds listed upon a stock exchange should be determined by taking the mean between the highest and lowest quoted selling prices upon the date of death. * * *

"Stock in a close corporation should be valued upon the basis of the company's net worth, earning and dividend-paying capac-

ity, and all other factors having a bearing upon the value of the stock. * * *"

The method employed by the Commissioner in determining the value of the stock held by both the Christiana and the Delaware Companies was that provided for corporations whose stocks and bonds are bought and sold in the open market on stock exchanges. The result in substance was the application of this method to the stock of these close corporations. The Board describes the method used by the respondent in redetermining the value of the stock in these two corporations as follows:

"There have never been any sales establishing the market value of them. In the absence of such sales the respondent valued the assets of each company, consisting principally of listed stocks, and divided the net worth of each company by the number of shares outstanding for the purpose of arriving at the value of each share. * * *

"In valuing the shares of stock owned by these family corporations, the respondent used the median between the high and low points at which these shares of stock sold on the stock exchanges on the date of death of the decedent, viz., November 19, 1927."

This not only ignored the treasury regulations prescribing the method by which stock in close corporations should be valued, but directly violated these regulations. Stock in such a corporation must not be valued "by taking the mean between the highest and lowest quoted selling prices" of the stock constituting the assets of the corporation to determine the worth of the company and then dividing this by the number of shares outstanding. That would be doing indirectly what may not be done directly. The stock in these two close corporations could not have been sold on the day of Mr. Laird's death, for no one could have forced the sale of all the stock constituting the assets of the Christiana and the Delaware Companies. At least, the executor of Mr. Laird's estate could not have

done it. Even if it could have been done and all this stock had been dumped on the market on a single day, the testimony was that it would have driven the price of the du Pont stock down from $325 to $125 per share. That of course was a guess, but it shows that the method which the Board used was impractical when applied to the determination of the value of the assets of close corporations which consist entirely of stock listed on stock exchanges, for it results in the application of that method to the stock of close corporations themselves. It is common knowledge that the price at which stocks sold in 1927, 1928, and 1929 did not at all reflect their true worth. The earning and dividend-paying capacity of many stocks during that period was less than one per cent. per annum of their selling price. It is for this reason that in a close corporation in which there is no sale for the stock, the treasury regulations will not permit the Commissioner or Board to take the mean between the highest and the lowest selling prices of a comparatively small number of the shares of the stock which constitutes the entire asset of the corporation, apply this price to the shares of stock, and thus find their speculative value and assess accordingly. Such stock must be based upon the company's worth, its earning and dividend-paying capacity, and all other factors which have a bearing upon the stock, one of which might be the mean value of the selling price on a particular day of the stock which it owns. Neither the Commissioner nor the Board gave any consideration whatever to the earning and dividend-paying capacity of the Christiana and Delaware stock. Their method was arbitrary and contrary to the regulations. This is all that it is necessary for the taxpayer to show in order to have the case remanded to the Board of Tax Appeals for further proceedings. Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623.

The case will be remanded to the Board for further proceedings in accordance with the treasury regulations in redetermining the value of the stock in question.